**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **W.S.,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **Case No. 4:26-cv-00466-CDL-CHW** |
| | : | **28 U.S.C. § 2241** |
| **Warden, STEWART DETENTION CENTER,**[1] | : | |
| | : | |
| **Respondent.** | : | |

**ORDER AND RECOMMENDATION**

Before the Court is Petitioner W.S.' application for a writ of habeas relief pursuant to 28 U.S.C. § 2241 (Doc. 1) as well as Respondent's Motion to Dismiss (Doc. 5). For the following reasons it is **RECOMMENDED** that Respondent's Motion to Dismiss (Doc. 5) be **DENIED**, that Petitioner's application for habeas relief (Doc. 1) be **GRANTED,** and that the Court order Petitioner's release from custody.[2]

**BACKGROUND**

Petitioner is a native and citizen of Eritrea. (Doc. 1 at ¶ 1); *see also* (Doc. 5-1 at ¶ 3). On December 15, 2017, Petitioner applied for admission into the United States at the San Ysidro Port

[1] [T]he default rule [for claims under 28 U.S.C. § 2241] is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citations omitted). The Clerk's office is **DIRECTED** to change the docket to reflect the Warden of Stewart Detention Center as the sole appropriately named respondent in this action.

[2] Petitioner also filed a Motion for Evidentiary Hearing (Doc. 8). Petitioner's motion (Doc. 8) is **TERMINATED** as moot.

of Entry but was found inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[3] (Doc. 5-1 at ¶ 4). On December 18, 2017, Petitioner was issued a Notice and Order of Expedited Removal. (Doc. 5-3). Immigration and Customs Enforcement/Enforcement and Removal Operations ("ICE/ERO") subsequently processed Petitioner for expedited removal. (Doc. 5-1) at ¶ 5. On January 14, 2018, United States Citizenship and Immigration Services ("USCIS") issued Petitioner with a Notice to Appear ("NTA"), alleging inadmissibility pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).[4] *Id.* at ¶ 6; *see also* (Doc. 5-2). On April 25, 2018, Petitioner filed an application for relief from removal. (Doc. 5-1 at ¶ 7). On June 26, 2018, Petitioner appeared *pro se* for a merits hearing on his application for relief. *Id.* at ¶ 8. On July 24, 2018, the Immigration Judge ("IJ") entered a written decision denying Petitioner's application for relief from removal and ordering Petitioner's removal. *Id.* at ¶ 9; *see also* (Doc. 1-2). There is nothing in the record to indicate that Petitioner ever filed an appeal from the IJ's July 24, 2018, removal order. Over five months later, ICE/ERO released Petitioner from custody on an Order of Supervision ("OSUP") on January 7, 2019. (Doc. 5-1) at ¶ 10; *see also* (Doc. 5-4).

On April 24, 2025, ICE/ERO took Petitioner into custody after his arrest for driving without a license by the Duluth Police Department in Duluth, Georgia. *Id.* at ¶ 11; *see also* (Doc. 5-5). Nothing in the record shows that ICE/ERO ever revoked Petitioner's prior OSUP. On May 8, 2025,

---

[3] 8 U.S.C. § 1182(a)(7)(A)(i)(I) provides:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission – who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title. . .is inadmissible.

8 U.S.C. § 1182(a)(7)(A)(i)(I).

[4] *See supra* at fn 3.

Enforcement and Removal Operations Headquarters ("ERO HQ") submitted its first travel document ("TD") request to the Eritrean Embassy fourteen days after Petitioner was initially detained. (Doc. 5-1 at ¶ 12). On May 30, 2025, the Eritrean government requested additional information on Petitioner because they were unable to locate him. *Id*. at ¶ 13. On June 9, 2025, ICE/ERO sent a copy of the Eritrean National Identity Card to the Eritrean embassy and "an identity verification interview was requested by the Eritrean consulate." *Id*. at ¶ 14. There is nothing in the record to show that an identity verification interview ever took place.

On August 2, 2025, ICE/ERO sent their first internal request for an update on Petitioner's TD request to ERO HQ. *Id*. at ¶ 15. On September 16, 2025, ERO HQ responded that Petitioner's TD request is still pending. *Id*. On November 15, 2025, ICE/ERO sent a second internal request for an update on Petitioner's TD request to ERO HQ. *Id*. at ¶ 16. On November 21, 2025, ERO HQ responded that Petitioner's TD request is still pending. *Id*. On December 22, 2025, ICE/ERO sent a third internal request for an update to Petitioner's TD request to ERO HQ. *Id*. at ¶ 17. On December 28, 2025, ERO HQ responded that Petitioner's TD request is still pending and sent its first external inquiry to the Eritrean government on Petitioner's TD request since June 9, 2025. *Id*. ERO HQ's December 28, 2025, correspondence with the Eritrean government took place over six months after its last correspondence with the Eritrean government. *Id*. at ¶ 17; *cf*. *id*. at ¶ 14. ERO HQ met with the Eritrean government the week of February 16, 2026, to discuss Eritrean removals and pending TD requests. *Id*. at 18. There is nothing in the record to show that Petitioner's request was included in these discussions.

On March 25, 2026, Petitioner filed his habeas application. (Doc. 1). Petitioner asserts that he "is entitled to immediate release from custody" under two claims for relief. *Id*. at ¶ 54; *see also id*. at ¶ 62. In the First Claim for Relief, Petitioner claims that his detention violates 8 U.S.C. §

1236(a)(6) "because he has been continuously detained pursuant to a final removal order for over six (6) months." *Id.* at ¶ 50; *see also id.* at ¶¶ 47-54. In the Second Claim for Relief, Petitioner asserts a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution under *Zadvydas v. Davis*. 533 U.S. 678 (2001). *Id.* at ¶¶ 55-62. Petitioner reasons that his "cooperation with ICE's removal efforts and ICE's inability to obtain travel documents after requesting them are evidence that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at ¶ 51.

On April 8, 2026, ERO HQ informed ICE/ERO a fourth time that Petitioner's TD request remains pending with the Eritrean government. (Doc. 5-1 at 19). Respondent further provides that:

> ICE/ERO is currently working with the government of Eritrea to secure a travel document for Petitioner. Eritrea is currently issuing travel documents to Eritreans. *Upon receipt*, there is a significant likelihood of removal in the reasonably foreseeable future. Eritrea is open for international travel, and ICE/ERO is currently removing non-citizens to Eritrea. In the last calendar year, ICE/ERO removed approximately twenty-one (21) Eritreans to Eritrea; recent removals to Eritrea occurred on December 5, 2025, and January 28, 2026.

*Id.* at ¶ 21 (emphasis added).

Respondent does not indicate when the receipt of Petitioner's TD request will be expected from the Eritrean government.

On April 16, 2026, Respondent filed his Motion to Dismiss. (Doc. 5). Respondent's Motion to Dismiss argues that Petitioner's habeas application should be dismissed under the *Zadvydas* analysis.[5] *Id.* at 4-7. On April 30, 2026, Petitioner filed his Reply in support of his habeas petition and in opposition to Respondent's Motion to Dismiss.[6] (Doc. 6). On May 26, 2026, an Immigration

---

[5] *See infra*. at 7-11.

[6] Petitioner re-asserts his arguments from his Petition and further argues that the Government has not rebutted his showing of no significant likelihood of removal in the reasonably foreseeable future under *Zadvydas*. 533 U.S. 678.

Panel interviewed Petitioner under 8 C.F.R. § 241.4(i)[7] to determine whether Petitioner should be released from custody. (Doc. 8-4). On August 17, 2026, the Immigration Panel issued a written memorandum stating that, "[t]here is currently [a significant likelihood of removal in the reasonably foreseeable future] to Eritrea."[8] *Id.* at 2. The Immigration Panel did not provide any reason or evidence to support their conclusion that there is a significant likelihood of removal in the reasonably foreseeable future. *See id.* On September 29, 2026, Petitioner filed a Motion for Evidentiary Hearing on his habeas petition. (Doc. 8). On October 9, 2026, Respondent filed a Response to Petitioner's Motion for Evidentiary Hearing repeating the assertion that "good faith, ongoing removal efforts" are enough alone to satisfy the second *Zadvydas* prong in the post-final order prolonged detention analysis. (Doc. 10); *see also Zadvydas v. Davis*, 533 U.S. 678.

**DISCUSSION**

Petitioner and Respondent argue whether Petitioner satisfies his burden of proof to show that there is not a significant likelihood of removal in the reasonably foreseeable future under the second part of the *Zadvydas* analysis. (Doc. 5 at 4-7); *see also Zadvydas v. Davis*, 533 U.S. 678.

---

[7] 8 C.F.R. § 241.4(i)(7) provides:

> No significant likelihood or removal. During the custody review process as provided in this paragraph (i), or at the conclusion of that review, if the alien submits, or the record contains, information providing a substantial reason to believe that the removal of a detained alien is not significantly likely in the reasonably foreseeable future, the HQPDU shall treat that as a request for review and initiate the review procedures under § 241.13. To the extent relevant, the HQPDU may consider any information developed during the custody review process under this section in connection with the determinations to be made by the Service under § 241.13. The Service shall complete the custody review under this section unless the HQPDU is able to make a prompt determination to release the alien under an order of supervision under § 241.13 because there is no significant likelihood that the alien will be removed in the reasonably foreseeable future.

8 C.F.R. § 241.4(7)

The only facts referred to in the significant likelihood of removal in the reasonably foreseeable future analysis done by the Immigration Panel is the May 8, 2025, TD request for Petitioner. This TD request was completed over a year before the Immigration Panel's review.

[8] The Immigration Panel's written memorandum also indicates that Petitioner was not represented by an attorney during this interview. (Doc. 8-4 at 1).

While Respondent does not raise jurisdictional arguments in his Response, the Court begins its legal analysis with a jurisdiction determination since habeas courts have limited subject matter jurisdiction on immigration matters. *See Mahdawi v. Trump*, 183 F.4th 103, 115 (2d Cir. 2026) (outlining that 8 U.S.C. § 1252(b)(9) was amended in 2005 to include a zipper clause providing that, unless otherwise stated in Section 1252, no habeas jurisdiction exists to review a final order of removal or questions of law and fact arising from any action taken or proceeding brought to remove an alien from the United States).

**I. Jurisdiction**

Jurisdiction exists to review post-final order prolonged detention claims under 8 U.S.C. § 1231 and *Zadvydas*. 8 U.S.C. § 1231; *see also Zadvydas*, 533 U.S. 678. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In other words, this Court may only hear a case over which it has subject matter jurisdiction. *See id*. There are generally three ways a party may establish subject matter jurisdiction in federal court: "(1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332." *Hallett v. Ohio*, 711 F. App'x 949, 950 (11th Cir. 2017) (per curiam) (citation omitted). "[T]he party invoking the court's jurisdiction bears the burden of proving the existence of federal jurisdiction," and if "the district court lacks subject matter jurisdiction, it has no power to render a judgment on the merits and should dismiss the complaint. . ." *Id*.

The Immigration and Nationality Act ("INA"), at 8 U.S.C. § 1252(a)(2)(B), provides for the judicial review of orders of removal. Section 1252(a)(2)(B)(ii) states that

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

Similarly, 8 U.S.C. § 1252(g) provides:

> except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter

8 U.S.C. § 1252(g).

Section 1252(g) is "narrow[ly] read[]" so that it blocks courts from exercising jurisdiction over only "three discrete actions[: the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999) (quoting Section 1252(g)). The Supreme Court has held that jurisdiction exists to review post-final order prolonged detention claims in habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678. This Court has previously reviewed such claims as well. *See M.M., Petitioner, v. Warden, Stewart Det. Ctr, et al., Respondents., No. 4:26-CV-107-CDL-AGH, 2026 WL 2321598 (M.D. Ga. Aug. 11, 2026),* report and recommendation adopted sub nom. *M.M. v. Warden, Stewart Det. Ctr., No. 4:26-CV-107-CDL-AGH, 2026 WL 2659548 (M.D. Ga. Sept. 9, 2026); J.A.S. v. Warden, Stewart Det. Ctr.*, No. 4:25-CV-244-CDL-CHW, 2025 WL 3777151 (M.D. Ga. Oct. 14, 2025), report and recommendation adopted, No. 4:25-CV-244 (CDL), 2025 WL 3776726 (M.D. Ga. Dec. 31, 2025); *see also Y.R.V. v. Warden, Stewart Det. Ctr.*, No. 4:25-CV-333-CDL-CHW, 2026 WL 1073835 (M.D. Ga. Feb. 23, 2026), report and recommendation adopted, No. 4:25-CV-333 (CDL),

2026 WL 1072997 (M.D. Ga. Apr. 20, 2026). Accordingly, jurisdiction exists to review Petitioner's post-final order prolonged detention claim under 8 U.S.C. § 1231 and *Zadvydas*.[9]

**II. Post-Final Order Prolonged Detention**

Generally, ". . . the Attorney General shall remove the alien from the United States within a period of 90 days" after an alien is ordered removed. 8 U.S.C. § 1231(a)(1)(A). The ninety-day removal period starts on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of an alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
>
> *Id*. at 1231(a)(1)(B)(i)-(iii).

While this ninety-day removal period takes place, ". . . the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title." 8 U.S.C. § 1231 (a)(2)(A). An alien may be detained beyond the ninety-day removal period if said alien is ". . . ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . ." 8 U.S.C. § 1231(a)(6). The Supreme Court of the United States further interpreted 8 U.S.C. § 1231(a)(6) to include detention

---

[9] The Court does not have jurisdiction to review any of the discretionary decisions made by an IJ or Immigration Panel. Petitioner includes his final removal order as an exhibit in his habeas application. See (Doc. 1-2). This court lacks jurisdiction to review the IJ's decision to remove Petitioner. Jurisdiction is limited in this case to review whether there is a significant likelihood of removal in the reasonably foreseeable future under *Zadvydas*. 533 U.S. 678.

beyond the ninety-day period if it is "reasonably necessary" to effectuate removal in *Zadvydas*. 533 U.S. 678; *see also* 8 U.S.C. § 1231(a)(6).

The Court recognized six months as a presumptively reasonable time period to allow the government to accomplish removal under 8 U.S.C. § 1231(a)(6). *Zadvydas*, 533 U.S. at 701. The Eleventh Circuit explained that a *Zadvydas* claim requires a two-part showing by the petitioner: "…an alien must show that: (1) he has been detained for more than six months following the final order of removal and (2) there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Vaz v. Skinner*, 634 F. App'x 778 (11th Cir. 2015); (*relying on Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir.2002)). Once the petitioner has met his burden to show the two *Zadvydas* prongs, the burden shifts to the respondent to rebut that showing. *Zadvydas*, 533 U.S. at 701.

Petitioner's initial burden to show that he has been detained more than six months (i.e. *Zadvydas* prong one) is strictly construed to "serve as a gatekeeping function to ensure that federal courts are not unnecessarily weighed down with hasty complaints by impatient illegal aliens who seek premature release back into American communities." *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1364 (N.D. Ga. 2002). The United States Courts for the Middle District of Georgia have consistently held that a petitioner's detention period does not begin until he or she is in ICE custody after serving his or her criminal prison sentence. *Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *4 (M.D. Ga. Mar. 14, 2018) ("A strong argument exists that the *Zadvydas* removal period did not even begin until . . . Petitioner was returned to ICE custody after serving his criminal prison sentence."); *see also M.K. v. Warden, Stewart Det. Ctr.*, No. 4:23-cv-136-CDL-MSH (M.D. Ga. filed Oct. 19, 2023), report and recommendation adopted, No. 4:23-cv-136-CDL-MSH (M.D. Ga. filed Dec. 1, 2023)(reasoning that "[f]inding Petitioner's current

detention presumptively unreasonable because of a period of detention occurring over eleven years ago would effectively eviscerate § 1231(a)'s purpose of allowing the Government time to arrange for an alien's removal, including contacting foreign consulates and obtaining necessary travel documents"); *J.A.S. v. Warden, Stewart Det. Ctr.*, No. 4:25-cv-244-CDL-CHW (M.D. Ga. filed Oct. 27, 2025), report and recommendation adopted, No. 4:25-cv-244-CDL-CHW (M.D. Ga. filed Dec. 31, 2025) (finding that Petitioner's Motion to Dismiss was premature because Petitioner failed to prove that he was detained for more than six months from the time of detainment to the time of filing his petition).

This Court specifically granted a petitioner's habeas application under the second *Zadvydas* prong in *M.M.*, 2026 WL 2321598, report and recommendation adopted sub nom. *M.M. v. Warden, Stewart Det. Ctr.*, 2026 WL 2659548 (M.D. Ga. Sept. 9, 2026). M.M. was also a native and citizen of Eritrea who filed a habeas application under the second *Zadvydas* prong. *Id*. at 1-2. M.M. entered ICE/ERO custody on October 22, 2018. *Id*. at 1. M.M. filed his habeas petition on January 21, 2026. *Id*. at 3. The Magistrate Judge entered a Report and Recommendation to grant Petitioner's habeas application and order release on August 11, 2026. The Court adopted the Report and Recommendation and ordered M.M.'s release on September 9, 2026. *See id*. The Court reasoned "that the combination of this information—[M.M.'s] continued compliance with attempts at getting a travel document, a statement from the President of the United States that Eritrea is recalcitrant in repatriating its nationals, and the lack of obtaining a travel document for [M.M.] in over a year of his current detention—is sufficient for [M.M.] to meet his burden" under the second *Zadvydas* prong. *Id*. at 3. The Court further reasoned that release was the appropriate remedy because Respondent had not met the shifted burden, observing that "a mere showing of continued

good faith efforts to effectuate removal, without more, is insufficient to meet Respondents' burden." *Id*. at 4.

The facts in this case are similar to the facts in *M.M*. Petitioner entered ICE/ERO custody on April 24, 2025, and filed his habeas Petition over eleven (11) months later on March 25, 2026. (Doc. 5-1 at ¶ 11); *cf*. (Doc. 1). There is no dispute that Petitioner satisfies the first *Zadvydas* prong analysis. Petitioner also satisfies the second *Zadvydas* prong by showing "there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Vaz*, 634 F. App'x 778. Petitioner remains detained in ICE/ERO custody after over seventeen months (17) months. Petitioner states that he has been cooperative throughout ICE/ERO's removal efforts. (Doc. 1 at ¶ 51). Respondent does not contest Petitioner's cooperation. *See* (Doc. 5). ICE/ERO has been unable to obtain a travel document despite Petitioner's cooperation. *See* (Doc. 5-1 at ¶¶ 12-19). Petitioner also alleges that his TD request is not fulfilled because Eritrea is "referred to as uncooperative for refusing to timely accept repatriations" and "the U.S. government issued sanctions against Eritrea" because of their failure to cooperate. (Doc. 1 at 45). Like *M.M*., Petitioner's compliance with the attempts to fulfill the TD request, Eritrea's classification as recalcitrant in repatriating its nationals, and the lack of obtaining a travel document in over a year are sufficient for Petitioner to meet his burden.

Respondent submits that a reasonable likelihood of removal in the reasonably foreseeable future exists because "[i]n the last calendar year, ICE/ERO has removed approximately twenty-one (21) Eritreans to Eritrea." (Doc. 5-1 at ¶ 21). Respondent also states that ICE/ERO officials met with the Eritrean government over seven (7) months ago on February 16, 2026. *Id*. at ¶ 18. Respondent further presents internal communications between ICE/ERO and ERO HQ as evidence that Petitioner has a reasonable likelihood of removal in the reasonably foreseeable future. *Id*. at

¶¶ 15-17. None of these arguments presents any indication that the Eritrean government will fulfil Petitioner's TD request in the reasonably foreseeable future. Arguing that "submitting travel document requests to a known recalcitrant country constitutes evidence to establish removal in the reasonably foreseeable future" is not enough. *See M.M.*, 2026 WL 2321598, report and recommendation adopted sub nom. *M.M. v. Warden, Stewart Det. Ctr.*, 2026 WL 2659548 (M.D. Ga. Sept. 9, 2026). Respondent's evidence includes only "continued good faith efforts to effectuate removal," which does not satisfy the shifted burden. *M.M.*, 2026 WL 2321598 at *4. Therefore, Petitioner's application for habeas relief should be granted and Respondent's Motion to Dismiss denied, and Petitioner should be released from custody.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that Respondent's Motion to Dismiss (Doc. 5) be **DENIED**, that Petitioner's application for habeas corpus relief (Doc. 1) be **GRANTED**, and the Court order Petitioner's release from custody.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and

recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 13th day of October, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge